J-S36014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAMERIN CALDWELL | : | |
| | : | |
| Appellant | : | No. 1595 WDA 2024 |

Appeal from the PCRA Order Entered December 9, 2024
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0009797-2019

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:                **FILED: November 20, 2025**

Camerin Caldwell appeals pro se from the order entered on December 9, 2024, dismissing his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Caldwell argues the PCRA court erred in dismissing his petition without a hearing and finding his counsel did not render ineffective assistance of counsel. We affirm.

After being initially charged with first-degree murder and related charges, Caldwell pled guilty to reduced charges upon the following facts as set forth by the Commonwealth during the guilty plea hearing:

> Had the Commonwealth proceeded to trial in this matter, the Commonwealth would have called detectives and officers from the Pittsburgh Police Department as well as civilian witnesses and medical professionals who would have testified to the following.

---

[*] Retired Senior Judge assigned to the Superior Court.

On or about Thursday, July 4th of 2019, at approximately 11:03 p.m., Zone 2 officers were dispatched to a shots-fired call in the 700 block of Penn Avenue in downtown Pittsburgh. Multiple officers responded to the area as there were thousands of people in downtown Pittsburgh that night at that time celebrating the Fourth of July and watching the fireworks display.

On arrival, officers found two males shot inside the open area known as the Agnes Katz Plaza located on Penn Avenue in downtown Pittsburgh. Kenneth Green, an 18-year-old male, was found shot approximately six times in his upper and lower body. Keyari[] Wynn, [] a 16-year-old male, was found with one gunshot to the head. Both victims were rushed to the hospital from the scene.

The scene was processed by Pittsburgh Police crime scene unit and detectives. Among the evidence collected included eight 9-millimeter shell casings recovered from the scene. Additionally, a firearm, a 9-millimeter Taurus pistol, Model G2C, with Serial Number TMC81749 was recovered from a dumpster in the northwest corner of the plaza. The weapon was not loaded and the magazine was empty when recovered.

In addition, detectives from the Mobile Crime Unit would testify that multiple surveillance videos were obtained from near the crime scene and surrounding area. Through the course of the investigation into the incident detectives learned, and they would testify along with the thousands of civilians downtown on the Fourth of July to celebrate, video surveillance captured two groups of actors in a physical altercation inside of Point State Park near the end of the fireworks display. The surveillance videos show that the group separated at some point and walked separately into the city before ultimately meeting back up with each other at the Agnes Katz Plaza where the shooting occurred at approximately 11:00 p.m.

Video surveillance would show that when the two groups came together in the plaza, a verbal altercation begins among several individuals. Some begin to physically fight each other. At approximately 11:02, a male wearing a white tank top and jean shorts is observed having a gun out in his hand and begins firing. This individual was identified as the defendant, Camerin Caldwell, from the video evidence by his stepfather, Antonio Wynn, and his mother, Rayshonna Caldwell[].

Once the defendant begins firing the gun, Keyari Wynn, the defendant's stepbrother, is observed to fall to the ground, and Kenneth Green is seen attempting to run prior to collapsing where police find him on their arrival. The defendant is then observed to run from the plaza past the dumpster with a firearm visible in his hand and is seen throwing the firearm into the dumpster where it was later recovered. At no time does the defendant stop to render aid.

Scientist Thomas Morgan from the Allegheny County Office of the Medical Examiner would testify that he performs an examination on the ballistics evidence in this case and documented same at report number 19 LAB 05264. Scientist Morgan would testify that he examined the 9-millimeter Taurus pistol recovered on scene from the dumpster. He would testify that the firearm was test-fired and found to be operable and to have a barrel length of less than 15 inches. He would also testify that he examined the eight spent 9-millimeter cartridge casings recovered on scene, and he would confirm that his examination revealed that all eight casings were discharged from the Taurus firearm he examined. The evidence would show that this firearm recovered and used in this instance was registered to a stepbrother of the defendant, Keanu Wynn [].

Victim Kenneth Green, who was shot multiple times in the upper and lower extremities and body, would testify that it was the defendant, Camerin Caldwell, who shot him that day. Kenneth Green would testify that the two groups of males that day fighting belonged to two different gangs, AFN and Choppa Boys. Green would explain that these are rival gangs that were releasing YouTube message videos against each other at the time. They had originally fought in Point State Park earlier that night, but each had gone their separate ways until they ran into each other again at Katz Plaza. Green would testify that he knows the defendant Caldwell because they used to be friends and hung out in ninth grade together. They eventually grew apart as they began to hang out with different people.

On the night in question, Caldwell and Green got into a fistfight. Green lost track of Caldwell and was standing there watching the others engaged and then saw Camerin Caldwell with a gun in his hand and saw Caldwell start firing.

The Commonwealth would have presented evidence at trial that the defendant was 18 years old at the time of this incident and did not have a valid license to carry a concealed weapon. Additionally, the defendant was a person prohibited from possessing a firearm as a result of an F1 robbery conviction at Juvenile Case Number 201702191 with a disposition date of 4/19/19.

Through the course of the trial, the Commonwealth would have presented medical records to support the charges. The medical records would have established that Kenneth Green suffered six bullet wounds to his body. He required multiple surgeries and still has at least one bullet lodged in his stomach. He suffered severe damage to his colon and kidneys which require ongoing treatment and his injuries resulted in the amputation of his left leg above the knee.

The medical records from Keyari Wynn would show that he suffered a debilitating gunshot wound to his head on July 4th, 2019. As a result of his injuries, Kyari was left with permanent brain damage requiring constant care. He remained nonverbal and required a ventilator and feeding tube until he eventually succumbed to his injuries related to this incident and died on or about May 14th, 2021.

Dr. Todd Luckasevic, medical examiner at the Allegheny County Office of the Medical Examiner, would testify that he performed an autopsy on Keyari Wynn at Case Number 21 COR 04220. He would testify that his autopsy showed that as a result of the gunshot wound to the head from the July 4th, 2019 incident, the bullet lacerated the skin, subcutaneous tissue and muscle of the scalp, fractured the skill and lacerated the brain. His opinion would be that Keyari Wynn died as a result of complications from a penetrating gunshot wound to the head and that his manner of death was homicide, and with that, the Commonwealth would rest, Your Honor.

N.T. Guilty Plea Hearing, 3/10/22, at 10-16.

The PCRA court set forth the relevant procedural history:

[Caldwell] pled guilty, pursuant to a plea agreement, on March 10, 2022 to the following charges: third degree murder, 18 Pa.C.S.A. § 2502(c); aggravated assault—serious bodily injury, 18 Pa.C.S.A. § 2702(a)(1)[;] firearms not to be carried without a

- 4 -

license, 18 Pa.C.S.A. § 6106(a)(1); and possession of a firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1). On June 23, 2022, [Caldwell] was sentenced to serve a period of incarceration of not less than one hundred and eighty six (186) months nor more than three hundred and seventy two (372) months, followed by a consecutive period of incarceration of not less than seventy-eight (78) nor more than one hundred and fifty-six (156) months, for a total aggregate sentence of twenty-two (22) years to forty-four (44) years [of] imprisonment. The court noted that [Caldwell] is not RRRI eligible.

No post-sentence motions or direct appeal were filed.

On June 5, 2023, [Caldwell] filed a pro se petition under the [PCRA]. Counsel was appointed to represent [Caldwell]. On October 10, 2023, after a thorough review of the pleadings and transcripts, along with legal research of possible issues and correspondence with [Caldwell], counsel filed a motion to withdraw as counsel and a "no merit" letter [pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (en banc)]. On November 13, 2023, the court granted the motion to withdraw and issued a notice of intent to dismiss, which provided [Caldwell] with twenty (20) days to respond. As no response was forthcoming, the petition was dismissed via order dated December 21, 2023, which was served on [Caldwell] by certified mail.

On January 26, 2024, [Caldwell] filed a notice of appeal. In a pro se "Application for Relief," [Caldwell] claimed he did not receive a copy of the notice of intent to dismiss. This resulted in the Superior Court issuing an order on August 2, 2024 vacating the order dismissing the PCRA petition and remanding the matter to [the PCRA court] with a direction to serve [Caldwell] with the notice of intention to dismiss.

Pursuant to said order from the Superior Court, the [PCRA court] issued an order on August 15, 2024 attaching a copy of the November 13, 2023 notice of intention to dismiss and a copy of the court's 1925(a) opinion, with a provision allowing [Caldwell] to file a response within twenty (20) days. After reviewing [Caldwell's] response, the court issued an order on December 9, 2024 again dismissing [Caldwell's] PCRA petition, which was served on him by certified mail.

On December 30, 2024, [Caldwell] filed a pro se notice of appeal.

PCRA Court Opinion, 1/9/25, at 1-2 (unnecessary capitalization and italics omitted).

The PCRA court did not order Caldwell to file a Rule 1925(b) statement after he filed the December 30, 2024 notice of appeal.[1] **See** Pa.R.A.P. 1925(b). The PCRA court authored a Rule 1925(a) opinion on January 9, 2025, providing brief explanations in support of its ruling and incorporating its prior Rule 1925(a) opinion dated May 1, 2024. **See** PCRA Court Opinion, 1/9/25, at 2-3; Pa.R.A.P. 1925(a).

Caldwell's brief does not conform to our Rules. He does not include the order or other determination in question, a statement of questions involved, statement of the case, or summary of the argument. **See** Pa.R.A.P. 2111(a). Caldwell includes a section labeled "Proffered Factual Argument" that seems to include both a case statement and his argument on appeal. **See** Appellant's Brief, Proffered Factual Argument, at 1-6 (pagination provided).

> We are cognizant that Appellant is pro se, however, this Court will not act as counsel and will not develop arguments on behalf of an appellant. It is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. As such, when issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof. Although this Court is willing to construe liberally materials filed by a pro se litigant, a pro se

---

[1] The PCRA court did order Caldwell to file a Rule 1925(b) statement after the January 26, 2024 notice of appeal and Caldwell complied with that order.

- 6 -

appellant enjoys no special benefit. Any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.

*Commonwealth v. Westlake*, 295 A.3d 1281, 1286 n.8 (Pa. Super. 2023) (brackets, quotation marks, italics, and citations omitted).

Here, because we are able to decipher two claims from Caldwell's deficient brief, we will not quash the appeal. Any other potential issues we deem waived as they are not properly developed. *See id.* The two reviewable arguments are: (1) the denial of an evidentiary hearing; and (2) ineffective assistance of counsel in connection with his guilty plea.

We will address Caldwell's second issue first as that will determine whether his first issue has merit. Caldwell asserts "counsel was in fact ineffective, and that the sole reason that [Caldwell] entered into any deal was based on what his counsel told him, what the prosecutor offered in exchange for his plea." Appellant's Brief, Proffered Factual Argument, at 2 (pagination provided). Caldwell does not explain what his counsel told him or what he believes the prosecutor offered for his plea of guilty. Caldwell seems to believe there was more to his plea agreement than a reduction of charges. *See id.* Caldwell argues an evidentiary hearing was necessary "to determine what was actually part of the bargain to [Caldwell] by his counsel." *Id.* at 5 (pagination provided).

After a thorough review of the record, the briefs of the parties, the applicable law, and the thorough opinion filed by the Honorable Susan

- 7 -

Evashavik DiLucente dated May 1, 2024, we conclude the PCRA court did not err in finding Caldwell's claim of ineffective assistance of counsel meritless. **See** PCRA Court Opinion, 5/1/24, at 11-15 (noting Caldwell is bound by the statements he made at his guilty plea hearing and he cannot challenge his plea by asserting he lied under oath, Caldwell acknowledged at the hearing that there was no agreement as to the sentence to be imposed and nothing else was promised him in exchange for his plea of guilty, and finding Caldwell's plea was knowingly, intelligently, and voluntarily entered).

In his final claim, Caldwell asserts the PCRA court should have held an evidentiary hearing so he "could present factual proof[.]" Appellant's Brief, Proffered Factual Argument, at 2 (pagination provided). This claim has no merit.

"A PCRA hearing is not a matter of right, and the PCRA court may decline to hold a hearing if there is no genuine issue concerning any material fact and the defendant is not entitled to relief as a matter of law." **Commonwealth v. Morrison**, 878 A.2d 102, 109 (Pa. Super. 2005) (en banc) (citation omitted). "We stress that an evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness." **Commonwealth v. Roney**, 79 A.3d 595, 605 (Pa. 2013) (internal quotation marks and citation omitted).

As the PCRA court aptly found, there is no genuine issue concerning any material fact and Caldwell is not entitled to relief as a matter of law. His only

claim for relief would contradict the statements he made at his guilty plea hearing. "Appellant is bound by his statements made during the colloquy." **Commonwealth v. Reid**, 117 A.3d 777, 783 (Pa. Super. 2015) (citation omitted). The only agreement between Caldwell and the Commonwealth was a reduction in the charges against him. The Commonwealth amended the charge of first-degree murder to third-degree murder, withdrew counts 2, 3, 7, and 8, and amended one count of aggravated assault from aggravated assault with a deadly weapon to aggravated assault causing serious bodily injury. **See** N.T. Guilty Plea Hearing, 3/10/22, at 2-3. Caldwell cannot now claim he lied under oath in an attempt to withdraw his knowing, voluntary, and intelligent guilty plea.

Finding no error in the PCRA court's order, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

11/20/2025

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CRIMINAL DIVISION |
| | : | |
| vs. | : | CP-02-CR-0009797-2019 |
| | : | |
| | : | [Pa. Super. Ct. # 184 |
| | : | WDA 2024] |
| CAMERIN CALDWELL, | : | |
| | : | |
| Defendant | : | |

## OPINION AND ORDER TO TRANSMIT RECORD TO APPELLATE COURT

The Court submits this Opinion and Order to Transmit Record to Appellate

Court in response to Defendant Camerin Caldwell's appeal pending in the

Pennsylvania Superior Court at docket number 184 WDA 2024. For the reasons

that follow, the December 21, 2023, Order of Court denying Mr. Caldwell's

request for relief pursuant to the Post-Conviction Relief Act ("PCRA") should be

affirmed.

### I.    Procedural Background

The Commonwealth charged Mr. Caldwell by criminal information with

eight counts of criminal conduct. Mr. Caldwell appeared before this Court to

enter a negotiated guilty plea agreement to: Count 1 (which, as amended,

was for third degree murder for the death of Keyari Wynn) – 18 Pa. C.S. §

2502(c), Count 4 (which, as amended, was for aggravated assault – serious

bodily injury) – 18 Pa. C.S. § 2702(a)(1), Count 5 (carrying a firearm without a

license) – 18 Pa. C.S. § 6106(a)(1), and Count 6 (persons not to posses a firearm)

– 18 Pa. C.S. §§ 6105(a)(1) & (c)(7). Counts 2, 3, 7, and 8 of the criminal

information were withdrawn by the Commonwealth pursuant to the parties' plea agreement.

Prior to entering his negotiated guilty plea, Mr. Caldwell completed a document titled "Guilty Plea Explanation Of Defendant's Rights." Therein, Mr. Caldwell affirmatively answered and acknowledged that he understood that because he was charged with more than one criminal offense, "the Court may impose a separate, or consecutive, sentence for each offense[.]" See Guilty Plea Explanation Of Defendant's Rights at 2, Question 5. He also answered and acknowledged that he had not been promised, even by his attorney, "anything in exchange for [his] guilty plea other than the terms of [the] plea bargain." Id. at 9, Question 56. In addition, during the guilty plea proceedings, the following occurred:

> THE COURT: Did you complete a Guilty Plea/Explanation of Defendant's Rights form?
>
> [MR. CALDWELL]: Yes.
>
> THE COURT: Did you complete this form with the advice and assistance of [your attorney]?
>
> [MR. CALDWELL]: Yes, ma'am.
>
> THE COURT: And was he available to answer any questions you had while you were completing this form?
>
> [MR. CALDWELL]: Yes, ma'am.
>
> THE COURT: Did you initial this form at the bottom of each page?

2

[MR. CALDWELL]: Yes, ma'am.

THE COURT: Did you also sign the form at the end?

[MR. CALDWELL]: Yes, ma'am.

THE COURT: And in initialing at the bottom of each page and signing the form at the end, did you verify and affirm that you had read and understood each and every question?

[MR. CALDWELL]: Yes, ma'am.

THE COURT: Also, that you answered each and every question truthfully and honestly?

[MR. CALDWELL]: Yes, ma'am.

THE COURT: Is this your signature, sir?

[MR. CALDWELL]: Yes, ma'am.

THE COURT: Did you sign this today?

[MR. CALDWELL]: Yes, ma'am.

THE COURT: All right. I will incorporate this form and your answers into these proceedings. . . .

See Guilty Plea Transcript ("PT") at 6-7.

Prior to entering his guilty plea, Mr. Caldwell heard the Commonwealth state that the parties had "no agreement as to sentence" and that the Commonwealth was seeking a deadly weapon sentencing enhancement. See id. at 3. Mr. Caldwell acknowledged the foregoing. Id. at 5.

3

Finally, prior to entering his guilty plea, the Court and Mr. Caldwell had the

following exchange:

THE COURT: . . . Mr. Caldwell, you've been charged at CC 9797 of 2019 with one count of criminal homicide in the third degree, the victim being Keyari Wynn . . . . That is a felony of the first degree and carries as a potential sentence a period of incarceration of up to 20 to 40 years.

You've been charged with one count of aggravated assault, attempt to cause serious bodily injury, and that victim is Kenneth Green. That is a felony of the first degree and the potential penalty at that count is a period of incarceration of up to 10 to 20 years.

You've been charged with one count of carrying a firearm without a license, which is a felony of the third degree. The potential penalty at that count is a period of incarceration of three and a half to seven years.

Finally, you've been charged with one count of persons not to possess a firearm, which is a misdemeanor of the first degree. The potential penalty at that count is two and half to five years.

So your total potential penalty on all of these counts, if they were imposed, the penalties **_consecutively_** would be a period of incarceration of up to 36 to 72 years.

4

                          Did you discuss these charges with
                          [your attorney]?

[MR. CALDWELL]:           Yes.

THE COURT:                Are you fully and completely aware
                          and understand the nature and
                          elements of each charge?

[MR. CALDWELL]:           Yes, ma'am.
THE COURT:                ***Do you fully and completely
                          understand the minimum and
                          maximum penalties that you're
                          facing today?***

[MR. CALDWELL]:           ***Yes, ma'am.***

Id. at 8-9 (emphasis added).

This Court ultimately accepted Mr. Caldwell's negotiated plea

agreement. Id. at 20. Sentencing was deferred pending the preparation of a

presentence report. Id. at 21.

On June 23, 2022, Mr. Caldwell appeared before this Court for sentencing.

The Court sentenced Mr. Caldwell to the following, among other things: at

Count 1, 15.5 to 31 years' imprisonment, at Count 4, 6.5 years to 13 years'

incarceration, at Count 5, two to four years' imprisonment, and at Count 6, no

further penalty. The sentence imposed at Count 4 was ordered to run

consecutively to that imposed at Count 1, and the incarceration ordered at

Count 5 was directed to be served concurrently with the sentence imposed at

Count 1. Accordingly, Mr. Caldwell's aggregate period of incarceration was 22

to 44 years.

5

Mr. Caldwell did not file a post-sentence motion or an appeal from his judgment of sentence. However, on June 5, 2023, Mr. Caldwell filed a *pro se* motion seeking PCRA relief. Therein, he alleged the following:

> Trial counsel was ineffective, because he didn't provide me with the necessary information to make the decision whether to enter a guilty plea or not. Which violates my 6th amendment right to counsel. Trial counsel was ineffective for misinforming me that I would receive a sentence term of 10 to 20 years in exchange for my guilty plea to third degree murder. In violation of my 6th amendment right to counsel. Trial counsel was ineffective for failing to object to the defective guilty plea colloquy that did not inform me of the possibility that my sentencing term could be imposed consecutively. In violation of my 6th amendment right to counsel.

See June 5, 2023, PCRA Petition at 4.

This Court appointed counsel to represent Mr. Caldwell during his PCRA proceedings. PCRA counsel ultimately filed a motion to withdraw as counsel and no-merit letter pursuant to Commonwealth v. Turner and Commonwealth v. Finley. This Court granted PCRA counsel leave to withdraw and provided Mr. Caldwell with a notice of intent to dismiss his *pro se* PCRA petition because the claims raised therein lacked merit, among other things.

By order entered December 21, 2023 (the "Order"), this Court dismissed Mr. Caldwell's *pro se* PCRA petition. Mr. Caldwell submitted a notice of appeal dated January 12, 2024. At this Court's direction, Mr. Caldwell filed a Pa.R.A.P. 1925(b) statement by document dated February 7, 2024.

6

## II.     Factual Background

The Commonwealth provided the following factual summary during Mr.

Caldwell's guilty plea proceedings:

> Had the Commonwealth proceeded to trial in this
> matter, the Commonwealth would have called
> detectives and officers from the Pittsburgh Police
> Department as well as civilian witnesses and medical
> professionals who would have testified to the following.
>
> On or about Thursday, July 4th of 2019, at
> approximately 11:03 p.m., Zone 2 officers were
> dispatched to a shots-fired call in the 700 block of Penn
> Avenue in downtown Pittsburgh. Multiple officers
> responded to the area as there were thousands of
> people in downtown Pittsburgh that night at the time
> celebrating the Fourth of July and watching the
> fireworks display.
>
> On arrival, officers found two males shot inside the
> open area known as the Agnes Katz Plaza located on
> Penn Avenue in downtown Pittsburgh. Kenneth Green,
> an 18-year-old male, was found shot approximately six
> times in his upper and lower body. [Keyari Wynn], a 16-
> year-old male, was found with one gunshot to the
> head. Both victims were rushed to the hospital from the
> scene.
>
> The scene was processed by Pittsburgh Police crime
> scene unit and detectives. Among the evidence
> collected included eight 9-millimeter shell casings
> recovered from the scene. Additionally, a firearm, a 9-
> millimeter Taurus pistol, Model G2C, with Serial Number
> TMC81749 was recovered from a dumpster in the
> northwest corner of the plaza. The weapon was not
> loaded and the magazine was empty when
> recovered.
>
> In addition, detectives from the Mobile Crime Unit
> would testify that multiple surveillance videos were
> obtained from near the crime scene and surrounding
> area. Through the course of the investigation into the

7

incident detectives learned, and they would testify along with the thousands of civilians downtown on the Fourth of July to celebrate, video surveillance also captured two groups of actors in a physical altercation inside of Point State Park near the end of the firework display. The surveillance videos show that the group separated at some point and walked separately into the city before ultimately meeting back up with each other at the Agnes Katz Plaza where the shooting occurred at approximately 11:00 p.m.

Video surveillance would show that when the two groups came together in the plaza, a verbal altercation begins among several individuals. Some begin to physically fight each other. At approximately 11:02, a male wearing a white tank top and jean shorts is observed having a gun out in his hand and begins firing. This individual was identified as the defendant, Camerin Caldwell, from the video evidence by his stepfather, Antonio Wynn, and his mother, Rayshonna Caldwell . . . .

Once the defendant beings firing the gun, Keyari Wynn, the defendant's stepbrother, is observed to fall to the ground, and Kenneth Green is seen attempting to run prior to collapsing where police find him on their arrival. The defendant is then observed to run from the plaza past the dumpster with a firearm visible in his hand and is seen throwing the firearm into the dumpster where it was later recovered. At no times does the defendant stop to render aid.

Scientist Thomas Morgan from the Allegheny County Office of the Medical Examiner would testify that he performs an examination on the ballistics evidence in this case and documented same at report number 19 LAB 05264. Scientist Morgan would testify that he examined the 9-millimeter Taurus pistol recovered on scene from the dumpster. He would testify that the firearm was test-fired and found to be operable and to have a barrel length of less than 15 inches. He would also testify that he examined eight spent 9-millimeter cartridge casings recovered on scene, and he would confirm that his examination revealed that all eight

casings were discharged from the Taurus firearm he examined. The evidence would show that this firearm recovered and used in this instance was registered to a stepbrother of the Defendant, Keanu Wynn . . . .

Victim Kenneth Green, who was shot multiple times in the upper and lower extremities and body, would testify that it was the defendant, Camerin Caldwell, who shot him that day. Kenneth Green would testify that the two groups of males that date fighting belong to two different gangs, AFN and Choppa Boys. Green would explain that these are rival gangs that were releasing YouTube message videos against each other at the time. They had originally fought in Point State Park earlier that night, but each had gone their separate ways until they ran into each other again at Katz Plaza. Green would testify that he knows the defendant Caldwell because they used to be friends and hung out in ninth grade together. They eventually grew apart as they began to hang out with different people.

On the night in question, Caldwell and Green got into a fistfight. Green lost track of Caldwell and was standing there watching the others engaged and then saw Camerin Caldwell with a gun in his hand and saw Caldwell start firing.

The Commonwealth would have presented evidence at trial that the defendant was 18 years old at the time of this incident and did not have a valid license to carry a concealed weapon. Additionally, the defendant was a person prohibited from possessing a firearm as a result of an F1 robbery conviction at Juvenile Case Number 201702191 with a disposition date of 4/19/19.

Through the course of the trial, the Commonwealth would have presented medical records to support the charges. The medical records would have established that Kenneth Green suffered six bullet wounds to his body. He required multiple surgeries and still has at least one bullet lodged in his stomach. He suffered severe damage to his colon and kidneys which require

9

ongoing treatment and his injuries resulted in the amputation of his left leg above the knee.

The medical records from Keyari Wynn would show that he suffered a debilitating gunshot would to his head on July 4th, 2019. As a result of his injuries, Keyari was left with permanent brain damage requiring constant care. He remained nonverbal and required a ventilator and feeding tube until he eventually succumbed to his injuries related to this incident and died on or about May 14th, 2021.

Dr. Todd Luckasevic, medical examiner at the Allegheny County Office of the Medical Examiner, would testify that he performed an autopsy on Keyari Wynn at Case Number 21 COR 04220. He would testify that his autopsy showed that as a result of the gunshot wound to the head from the July 4th, 2019 incident, the bullet lacerated the skin, subcutaneous tissue and muscle of the scalp, fractured the skull and lacerated the brain. His opinion would be that Keyari Wynn died as a result of complications from a penetrating gunshot would to the head and that his manner of death was homicide, and with that, the Commonwealth would rest, Your Honor.

PT at 10-16.

## III.   Discussion

In his Pa.R.A.P. 1925(b) statement, Mr. Caldwell alleges three errors. Each of Mr. Caldwell's claims lacks merit, and the Court will address them in reverse order.

### A.   Mr. Caldwell Was Informed That He Could Receive Consecutive Sentences

According to Mr. Caldwell, this Court erred by not informing him that the Court "could impose consecutive terms of imprisonment." See Pa.R.A.P. 1925(b) Statement at ¶ 3. Such an argument is clearly belied by the record. As set forth

10

above on pages two through five, Mr. Caldwell was apprised of the possibility of consecutive sentences and acknowledged that he could receive the same. The instant allegation of error fails.

**B.      Mr. Caldwell Was Not Promised A Ten- To Twenty-Year Sentence.**

Mr. Caldwell further asserts that his plea counsel was "ineffective for promising [Mr. Caldwell] that he would receive a sentence of 10 to 20 years imprisonment." See Pa.R.A.P. 1925(b) Statement at ¶ 2.  Such a claim lacks merit.

The Superior Court has explained:

> [A] claim for ineffective assistance of counsel in connection with advice rendered regarding whether to plead guilty is cognizable under the PCRA pursuant to 42 Pa. C.S. § 9543(a)(2)(ii). . . .
>
> Pennsylvania has recast the two-factor inquiry regarding the effectiveness of counsel set forth by the United States Supreme Court in *Strickland v. Washington* . . . as the following three-factor inquiry:
>
>> In order to obtain relief based on an [ineffective assistance of counsel] claim, a petitioner must establish (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.
>
> Trial counsel is presumed to be effective, and [a petitioner] bears the burden of pleading and proving each of the three factors by a preponderance of the evidence.

11

The right to constitutionally effective assistance of counsel extends to counsel's role in guiding his client with regard to the consequences of entering into a guilty plea.

> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the effectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

> Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The reasonable probability test is not a stringent one; it merely refers to a probability sufficient to undermine the confidence in the outcome.

Commonwealth v. Barndt, 74 A.3d 185, 191-92 (Pa. Super. Ct. 2013) (quotation marks and citations omitted).

Here, the record reveals that Mr. Caldwell fully understood – by his own admission – that he could face a maximum sentence of 36 to 72 years' imprisonment. See PT at 8-9. The record also makes clear that there "[wa]s no agreement as to sentence" between the parties. Id. at 3. Further, Mr. Caldwell affirmed under oath that no one, not even his attorney, had "promised [him] anything in exchange for [his] guilty plea other than the terms of [the] plea bargain[,]" which, as noted, did not involve an agreement as to sentence. See

12

Guilty Plea Explanation Of Defendant's Rights at 9, Question 56; see also PT at 2

& 6-7 (Mr. Caldwell acknowledging that he completed the Guilty Plea

Explanation Of Defendant's Rights form and answered every question "truthfully

and honestly[,]" among other things).

The Superior Court has stated:

> The longstanding rule of Pennsylvania law is that a
> defendant may not challenge his guilty plea by
> asserting that he lied while under oath, even if he avers
> that counsel induced the lies. A person who elects to
> plead guilty is bound by the statements he makes in
> open court while under oath and he may not later
> asserts grounds for withdrawing the plea which
> contradict the statements he made at his plea
> colloquy. . . .

Commonwealth v. Pollard, 832 A.2d 517, 523-24 (Pa. Super. Ct. 2003); see also id.

at 524 ("a defendant may not knowingly lie to the court while under oath" and

"[w]e cannot permit a defendant to postpone the final disposition of his case by

lying to the court and later alleging that his lies were induced by the prompting

of counsel" (citation omitted)).

Based on the foregoing, Mr. Caldwell's instant claim of ineffectiveness

fails. The record demonstrates that there was no agreement as to sentence in

exchange for Mr. Caldwell's guilty plea, that Mr. Caldwell admitted that he

knew he faced a potential sentence of 36 to 72 years' incarceration, and that

Mr. Caldwell swore he had not been promised anything (even by his counsel)

other than the plea agreement as stated on the record. He cannot now assert

otherwise and, thereby, obtain relief. His claim that counsel promised him a ten-

13

to twenty-year sentence lacks merit.  No ineffective assistance of counsel was properly pled or proven.

### C.  Counsel Did Not Cause Mr. Caldwell To Enter An Unlawful Plea.

Mr. Caldwell's final claim of purported error is that plea counsel was "ineffective for causing [Mr. Caldwell] to enter an unknowing, unintelligent and involuntary guilty plea by not providing [him] with accurate and sufficient information that [he] needed to decide whether or not to enter a plea of guilty[.]"  See Pa.R.A.P. 1925(b) Statement at ¶ 1.  Such a claim fails.

The standard for ineffective assistance of counsel as it relates to a guilty plea has been set forth above.  In addition, the Superior Court has explained:

> A court accepting a defendant's guilty plea is required to conduct an on-the-record inquiry during the plea colloquy [to determine the lawfulness of the plea].  The colloquy must inquire into the following areas:
>
> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere?*
>
> (2) Is there a factual basis for the plea?
>
> (3) Does the defendant understand that he or she has the right to trial by jury?
>
> (4) Does the defendant understand that he or she is presumed innocent until found guilty?
>
> (5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?
>
> (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

14

Pollard, 832 A.2d at 522-23 (citation omitted). Such areas of inquiry may be addressed by the court in a "written colloquy that is read, completed, signed by the defendant, and made part of the record of the plea proceedings[,]" see Pa.R.Crim.P. 590 at cmmt., which occurred in this case, see PT at 6-7. "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing[, and the defendant] . . . bears the burden of proving otherwise." Pollard, 832 A2d at 523.

Here, the Mr. Caldwell's Guilty Plea Explanation Of Defendant's Rights form and oral colloquy during the plea proceedings, as well as the Commonwealths' factual recitation, demonstrate that Mr. Caldwell's guilty plea was knowing, intelligent, and voluntary, and thus lawful. He has not demonstrated otherwise. Accordingly, his argument that plea counsel did not provide him with accurate and sufficient information lacks merit. Mr. Caldwell has not properly pled or proven ineffective assistance of counsel.

## IV. Conclusion

Based on the foregoing, the Order should be affirmed. Mr. Caldwell was not entitled to PCRA relief. The Department of Court Records, Criminal Division, is ordered and directed to transmit the record in the above-captioned matter to the Pennsylvania Superior Court without delay.

BY THE COURT:

Dated: 5|1|24

_____, J.
Susan Evashavik DiLucente

15

cc:    Deputy District Attorney Ronald M. Wabby, Jr.
Office of the District Attorney
401 Allegheny County Courthouse
Pittsburgh, PA 15219

Camerin Caldwell
QP1482
SCI Forest
P.O. Box 945
286 Woodland Drive
Marienville, PA 16239